## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TEAM HERSCHEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT HOWELL AND | ) | JURY TRIAL DEMANDED |
| COMPANY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Team Herschel, Inc. ("THI"), Plaintiff, hereby files its Complaint, as follows:

### Jurisdictional Allegations

1.

THI is a not for profit corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 900 Circle 75 Parkway, Atlanta, Cobb County, Georgia 30339.

2.

Scott Howell and Company, Inc. ("Howell"), Defendant, is a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 3900 Willow Street, Suite 200, Dallas, Harris County, Texas 75226.

3.

Jurisdiction in the Court is based upon the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(A)(2).

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(B)(2) in that a substantial part to the events giving rise to the claims asserted in this action occurred within this District.

5.

The amount in controversy exceeds $75,000, exclusive of interests and costs.

6.

Howell is subject to personal jurisdiction in Georgia pursuant to O.C.G.A. § 9-10-91(1) because Howell transacted business in Georgia by negotiating and entering into a contract in Georgia; Howell's agents and representatives, including Scott Howell, came to Georgia in connection with Howell's performance of the contract; Howell was in regular communications with THI in Georgia by telephone and internet with respect to its performance of the contract; and Howell sent invoices to Georgia for services that were paid by THI from Georgia.

## General Allegations

7.

THI is the campaign organization for Herschel Walker's 2022 campaign for the United States Senate.

8.

THI and Howell entered into an agreement entitled "Letter of Appointment" (the "Agreement") to act as the media agency and a strategist for the campaign.

9.

Pursuant to the Agreement, Howell placed advertising for the campaign and submitted invoices to THI for that advertising.

## The Escrow Account

10.

Unbeknownst to THI, Howell's invoices inflated the cost of advertising by 7% to fund an "escrow account" (the "Escrow Account") which was not authorized by the Agreement.

11.

One million, six hundred twenty thousand, ninety-two dollars and sixty-eight cents ($1,620,092.68) was ultimately transferred by Howell into the Escrow Account.

12.

The candidate and the campaign treasurer did not learn of the existence of the Escrow Account until 2023.

13.

Although Howell advised the campaign manager and a political adviser of the existence of the Escrow Account at some point, they did not have authority to approve such an account, the account was not authorized by the Agreement, and the account was held by a bank not approved by THI.

14.

Following the election, Howell paid itself $160,812.32 from the Escrow Account without authorization or approval from THI.

**Digital Advertising**

15.

THI engaged a vendor (the "Vendor") to provide digital advertising advice and placement during the campaign.

16.

At no time did Howell disclose to THI that Scott Howell had a financial interest in the Vendor.

17.

Howell disbursed $975,000 from the Escrow Account to the Vendor as an advance for future purchases of advertising that had not been performed by the Vendor and for which no payment was due.

18.

The funds were supposedly used for advertising on Connected TV ("CTV").

19.

A connected TV (CTV) is any TV set connected to the internet, most commonly used to stream video.

20.

Also encompassing smart TVs, the term refers to TVs connected by set-top boxes, TV sticks, and even gaming consoles.

21.

The Vendor subsequently generated five invoices that state that a portion of the $975,000 received from Howell was used for CTV advertising.

22.

That representation on the invoices was untrue.

23.

Howell and Scott Howell benefited directly or indirectly from the use of THI's campaign funds disbursed to the Vendor from the Escrow Account

## Count One

### (Accounting)

24.

Howell utilized THI funds, in part, in a manner not contemplated by the Agreement.

25.

Howell has a legal duty to account to THI.

26.

Howell caused THI's funds to be used in inter-company financial transactions without proper oversight.

27.

THI is entitled to a legal accounting as to Howell's use of THI funds.

## Count Two

### (Breach of Fiduciary Duty)

28.

THI realleges the allegations contained in paragraphs 1 through 27 above.

29.

Howell, by reason of the Agreement, its role as a member of the campaign's senior strategy team, and its possession and control of THI's funds, occupied a confidential relationship with THI.

30.

Howell therefore owed THI a duty of utmost good faith and due care.

31.

Howell breached the fiduciary duty it owed to THI.

32.

THI has been damaged by this breach.

33.

Howell is liable to THI for damages in an amount to be proven at trial.

34.

Howell's breach of its fiduciary duty shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

35.

Howell is therefore liable for punitive damages in an amount to be determined by the enlightened conscious of the jury.

## Count Three

### (Breach of Contract)

36.

THI realleges the allegations contained in paragraphs 1 through 35 above.

37.

The Agreement did not authorize Howell to create the Escrow Account.

38.

Howell acted without authority in creating the Escrow Account.

39.

Howell has paid itself out of the Escrow Account without authorization from THI.

40.

Howell has therefore breached the Agreement.

41.

As a result of the breach, THI has been damaged.

42.

Howell is liable to THI for all damages caused by its breach of the Agreement.

**Count Four**

**(Prejudgment Interest)**

43.

THI realleges the allegations contained in paragraphs 1 through 42 above.

44.

THI is entitled to recover from Howell prejudgment interest at the legal rate.

## Count Five

### (Attorney Fees)

45.

THI realleges the allegations contained in paragraphs 1 through 44 above.

46.

Howell has acted in bad faith, has put THI to unnecessary trouble and expense and has been stubbornly litigious.

47.

Howell is therefore liable to THI for its expenses of litigation, including, reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, THI requests this Court:

(a)  Grant judgment for THI and against Howell on the Complaint;

(b)  order an accounting as to Howell's use of THI's funds;

(c)  grant judgment for THI and against Howell for damages arising from its breach of fiduciary duty, including punitive damages;

(d)  grant judgment for THI and against Howell for its breach of the Agreement;

(e)  award THI prejudgment interest;

(f)  award THI its expenses of litigation, including reasonable attorney fees, pursuant to O.C.G.A. § 13-6-11;

(g) tax all costs against Howell; and

(h) grant THI such additional relief as this Court deems just.

THI HEREBY DEMANDS TRIAL BY JURY.

This 27th day of June, 2024.

*s/ Michael J. King*
Michael J. King
Georgia Bar No. 421160
kingm@gtlaw.com
Attorney for Plaintiff
Team Herschel, Inc.

**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, GA  30305
Tel:   (678) 553-2100